United States District Court
Southern District of Texas
**ENTERED**
June 01, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JUAN A MORENO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00146 |
| | § | |
| ISAAC KWARTING, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Juan A. Moreno, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court are: (1) a Motion to Dismiss filed by Defendants Tanya Lawson, Daniel Dominguez, Candace Moore, Megan Thompson, Placido Samaniego, and Gene E. Miller (D.E. 48); (2) a Motion to Dismiss filed by Isaack Kwarteng, Erick Echavarry, Steve Steger, Vivi S. Daniel,  and Donna Bryant (D.E. 49); (3) Plaintiff's Motion for Default Judgment (D.E. 55); and (4) Plaintiff's motions seeking preliminary injunctive relief (D.E. 57, 58, 62, 64).

For the reasons set forth below, the undersigned respectfully recommends that Defendants' motions to dismiss be **GRANTED** in all respects. The undersigned respectfully recommends further that: (1) Plaintiff's claims against Defendant Lisa Kendra be **DISMISSED with prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B); (2) the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims of negligence and medical malpractice; (3) Plaintiff's Motion for Default

Judgment (D.E. 55) be denied; and (4) Plaintiff's motions effectively seeking preliminary injunctive relief (D.E. 57, 58, 62, 64) be denied.

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division and is currently housed at the Estelle Unit in Huntsville, Texas. Plaintiff's claims in this lawsuit occurred in connection with his previous housing assignment at the McConnell Unit in Beeville, Texas.

In his original complaint, Plaintiff's allegations primarily focused on an incident occurring on June 20, 2019, when he slipped and fell in the restroom.  (D.E. 1, p. 4).  On July 17, 2020, Plaintiff filed his amended complaint and a brief, naming the following McConnell Unit officials in their individual and official capacities: (1) Dr. Isaac Kwarteng; (2) Medical Physician Erick Echavarry; (3) Practice Manager Lisa Kendra; (4) Practice Manager Tanya Lawson; (5) Optometrist Steven Steger; (6) Law Library Coordinator Candace Moore; (7) Law Library Assistant Megan Thompson; (8) Mental Psychotherapist Vivi S. Daniel[1]; (9) Mental Health Provider Daniel Dominguez; (10) Captain Placido

---

[1] Defendants have clarified that the defendant identified by Plaintiff as "Daniel Vivis" is "Vivi S. Daniel."

Samaniego[2]; (11) Counsel Substitute Donna Bryant; and (12) Assistant Warden Miller. (D.E. 22, pp. 2-4; D.E. 23, pp. 3).

Plaintiff generally asserts violations of his constitutional rights and his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A). Plaintiff seeks declaratory, injunctive, and monetary relief. He seeks an injunction directing: (1) Defendants Kwarteng, Kendra, and Lawson to provide him with proper medical care; and (2) all Defendants to cease denying him medical care such as the issuance of corrective eyeglasses, massage treatments, and the medical boot wear. (D.E. 22, pp. 8-10). Plaintiff further seeks to be released into the free world for medical care as he is experiencing delays in receiving medical care at the Estelle Unit. (D.E. 23, p. 4).

## III.    LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir.

---

[2] Defendants have clarified that the defendant identified by Plaintiff a "S. Placido" is "Placido Samaniego."

1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id.*

Rule12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 554-55. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## IV.   DISCUSSION

A.      **Mootness**

In their motions to dismiss, Defendants contend that Plaintiff's requests for injunctive relief are moot because he is no longer housed at the McConnell Unit.  (D.E. 48, pp. 4-6; D.E. 49, pp. 4-6).  Plaintiff does not appear to directly address this contention in his response briefs.

Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies.  U.S. Const. Art. III, § 2.  This article requires parties seeking to invoke federal court jurisdiction to demonstrate they have a legally cognizable interest or personal stake in the outcome of a case.  *Genesis Healthcare v. Symczyk*, 569 U.S. 66, 71 (2013); *Payne v. Progressive Financial Services, Inc.*, 748 F.3d 605, 607 (5th Cir. 2014).  A live controversy must exist at every stage of the litigation,  *Genesis*, 569 U.S. at 71.

A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). In other words, if a controversy between parties resolves to the point that they no longer qualify as " 'adverse parties with sufficient legal interests to maintain the litigation,' " a court is without power to entertain the particular claim. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (quoting *United States v. Lares-Meraz*, 452 F.3d 352, 351 (5th Cir. 2006) (per curiam)). Courts, therefore, lack "constitutional jurisdiction" to resolve an issue where there is no Article III controversy. *See Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

It is undisputed that Plaintiff is no longer confined at the McConnell Unit and is instead housed at the Estelle Unit.   Claims for declaratory and injunctive relief based on the conditions of confinement are rendered moot upon prisoner's release from custody or transfer to another facility. *Smith v. City of Tupelo, Mississippi*, 281 F. App'x 279, 282 (5th Cir. 2008) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)). *See also Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (requests for injunctive and declaratory relief become moot when inmate is transferred to another facility).  Furthermore, the possibility of Plaintiff's return to the McConnell Unit is much too speculative to warrant relief. *Smith*, 281 F. App'x at 282. Because Plaintiff is no longer incarcerated at the McConnell Unit, it is respectfully recommended that Defendants' motions to dismiss (D.E. 48, 49) be granted to the extent that Plaintiff's requests for injunctive relief should be dismissed from this case.

### B.    Joinder of Unrelated Claims

In   their motions to dismiss, Defendants contend that Plaintiff raises numerous claims that are not related to the extent they can be joined in one action.  (D.E. 48, pp. 8-10; D.E. 49, p. 7-9). Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to join either as "independent or as alternative claims, as many claims as it has against an opposing party." Federal Rule of Civil Procedure 20(a), in turn, only allows the joinder of several parties if the claims arose out of a single transaction and contain a question of fact or law common to all the defendants.  In other words, "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

The undersigned agrees with Defendants that Plaintiff's amended complaint impermissibly attempts to raise claims against multiple defendants stemming from more than one transaction or occurrence.  As best as can be gleaned from his rambling and confusing narrative, Plaintiff appears to primarily claim that certain defendants acted with deliberate indifference following Plaintiff's slip and fall in the McConnell Unit restroom on June 20, 2019.  Plaintiff, however, has raised several unrelated claims unrelated to that transaction and occurrences.  These claims consist of allegations regarding: (1) violations of his due process rights, failure to protect, and discrimination both before and since he filed this action; (2) complaints involving denial of mental health and physical treatment that are separate from his claims involving the slip and fall on June 20, 2010; (3) complaints involving allegations which were previously presented in a prior action, *Moreno v. Davis, et al.*, No. 2:16-CV-543 (S.D. Tex. filed on Dec. 30, 2016) ("*Moreno I*"); and (4) complaints of medical treatment provided by medical providers at the Estelle Unit.

By alleging unrelated occurrences or transactions against different prison officials, Plaintiff's complaint does not comport with Rule 18 and Rule 20 of the Federal Rules of Civil Procedure.  *See* 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1583 (2d ed. 1990) (noting that, under Rules 18(a) and 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed); *see also Hubbard v. Haley*, 262 F.3d 1194, 1197 (11th Cir. 2001) (refusing to allow the joinder of multiple plaintiffs attempting to circumvent the PLRA's unambiguous requirement that each prisoner be required to pay

the full amount of the filing fee); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

Despite Plaintiff's failure to comply with Rules 18 and 20, the undersigned will consider those claims related to his slip and fall on June 20, 2019, which are properly joined in this action.  As discussed more thoroughly below in the context of analyzing Plaintiff's slip-and-fall claim, the undersigned will recommend the dismissal of all unrelated claims without prejudice to Plaintiff asserting them in separate complaints.

### C.    Deliberate Indifference (Slip and Fall)

A constitutional violation under the Eighth Amendment occurs only when two requirements are met.  "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (internal quotations and citation omitted).   To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted).  Deliberate indifference is more than

mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

"Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "[U]nsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

Plaintiff alleges the following background facts with regard to the slip and fall incident that occurred on June 20, 2019, when the McConnell Unit went into lockdown. That night, Plaintiff sought to use the restroom.  Plaintiff slipped and fell in the restroom due to water being on the floor.  Plaintiff believed that his racist cellmate, Bill Ellas, threw the water on the floor.  Plaintiff injured his neck, back, leg, arms, forehead, and eyes as a result of the fall.

Two officers took Plaintiff to medical after his slip and fall.  Pictures were taken of Plaintiff's injuries.  Inmate Ellas was also taken to medical.  Two nurses attending to Plaintiff called 911, and Plaintiff was taken to the Beeville Hospital.  X-rays and a Ct scan were taken at the hospital of Plaintiff's injuries to his forehead, eye, and eyes.  Plaintiff previously had surgery in 2011 on his left eye. The trauma caused by the fall on June 20, 2019 caused Plaintiff to feel like something was poking his eye.

### (1) Defendants Kwarteng, Echavarry, and Steger

Plaintiff alleges that: (1) Defendant Kwarteng, the McConnell Unit's medical director, is responsible for ensuring inmates receive proper medical care; (2) Defendant Echavarry, a medical provider, is generally responsible for the diagnosis, treatment, and care of prisoners with medical issues; and (3) Defendant Steger is an optometrist charged with the treatment and care of prisoners with vision issues, including prescribing prisoners with contacts or glasses.  (D.E. 22, p. 3).  Plaintiff alleges that, upon Plaintiff's return from the Beeville Hospital, these defendants delayed Plaintiff physical therapy treatment for his neck, back, and eyes.  (D.E. 1, p. 4, D.E. 22, pp. 2-3).  Plaintiff further indicated that he

10 / 33

suffered "excruciating pains" in connection with the denial of adequate medical care.  (D.E. 22, p. 9).      Defendants contend in their motion to dismiss that Plaintiff has failed to state a deliberate indifference claim against Defendants Kwarteng, Echavarry, and/or Steger. (D.E. 49, pp. 13-24).  Defendants further contend that many of Plaintiff's allegations in his amended complaint concern allegations of inadequate medical treatment arising from *Moreno I*, his current incarceration at the Estelle Unit, or are otherwise unrelated to the June 20, 2019 slip and fall incident.  (D.E. 49, p. 14-18).  The undersigned agrees.

Plaintiff has failed to provide any specific facts as to how or when Defendants Kwarteng, Echavarry, and Steger failed to provide or otherwise delayed Plaintiff's physical therapy after he returned from the hospital following his slip and fall on June 20, 2019. Plaintiff's allegations, accepted as true, show that he was immediately sent to the hospital following his slip and fall on June 20, 2019.  Plaintiff provides no facts to describe: (1) when Defendants Kwarteng, Echavarry, and Steger refused or delayed Plaintiff treatment for his injuries suffered as a result of his slip and fall; or (2) how any delay in physical therapy or treatment exacerbated his injuries.  Beyond his conclusory and threadbare allegations of deliberate indifference, he sets forth no factual basis to show that Defendants Kwarteng, Echavarry, or Steger purposely denied him medical care or treatment following his June 20, 2019 slip and fall to inflict pain, ignored his complaints, or engaged in any conduct clearly evincing a wanton disregard for Plaintiff's serious medical needs.  He further alleges nothing to show that he was substantially harmed by any delay of medical care or treatment by these defendants.

11 / 33

Rather than provide specific facts related to the June 20, 2019 incident, Plaintiff provides a confusing timeline as follows regarding medical attention received on unrelated matters: (1) he was denied medical care on March 19, 2019 for prior back and neck issues; (2) on March 12, 2020, Plaintiff submitted an I-60 form while housed at the Jester 3 Unit for his chronic issues to his back, neck, and leg issues; and (3) when Plaintiff returned to the McConnell Unit on March 19, 2019, he requested physical therapy treatment, which "was denied til now," as well as medical shoes and a back brace  (D.E. 22, p. 6; D.E. 50, pp. 8-9).  Plaintiff also attached to his original complaint a Step 1 grievance, dated September 18, 2017, in which he complained about conspiratorial and retaliatory actions taken by Defendants Kwarteng, Echavarry, and Steger after he filed a previous civil action against them for violating his constitutional rights.  (D.E. 1, pp. 10-11).  Plaintiff apparently was referring to *Moreno I*, which was pending at that time.  In *Moreno I*, a case filed in late 2016, Plaintiff brought due process and deliberate indifference claims against many of the defendants named in this case, including Defendants Kwarteng, Echavarry, and Steger. All of Plaintiff's claims in that case were dismissed with prejudice.  (*Moreno I*, D.E. 81, 82).

Any claims deriving from Plaintiff's mental or physical conditions before June 20, 2019, from medical treatment received at other units, or from incidents pertaining to Plaintiff's 2017 grievance have no relation to his deliberate indifference claims arising from June 20, 2019 slip and fall.  Thus, to the extent Plaintiff seeks to raise claims against Defendants Kwarteng, Echavarry, and Steger arising from actions taken before June 20,

2019, actions taken at other units, or retaliatory actions taken since *Moreno I*, such allegations arise out of transactions or occurrences that are separate from and unrelated to the facts supporting the basis for his deliberate indifference claims arising from the slip and fall.

Accordingly, the undersigned respectfully recommends Defendants' motion to dismiss (D.E. 49) be granted to the extent that: (1) Plaintiff's deliberate indifference claims against Defendants Kwarteng, Echavarry, and Steger, arising from his June 20, 2019 slip and fall, be dismissed for failure to state a claim for relief; and (2) the remaining claims against Defendants Kwarteng, Echavarry, and Steger be dismissed on the basis of improper joinder under Rules 18(a) and 20).

### (2) Defendants Moore and Thompson

Plaintiff alleges that: (1) Defendants Moore and Thompson, who work in the unit's law library, have interfered with the current lawsuit by limiting Plaintiff's ability to access the restroom during his two-hour law library sessions; (2) despite being aware of Plaintiff's disabilities and taking of medications, Defendants Moore and Thompson failed to allow Plaintiff to use the restroom; (3) their actions caused Plaintiff to suffer in excruciating pain during the law library sessions; (4) from June 2019 through March 2020, Defendants Moore and Thompson placed Plaintiff in a cage during his law library sessions and then directed officers to escort Plaintiff back to his cell; and (5) the actions of Defendants Moore and Thompson causes Plaintiff to sometimes urinate all over his pants due to not being allowed to use the restroom during his sessions.

Defendants contend in their motion to dismiss that Plaintiff's claims against Defendants Moore and Thompson should be dismissed because they are unrelated to the slip-an-fall allegations.   (D.E. 48, pp. 11-12).   The undersigned agrees.   Plaintiff's allegations against them arise out of transactions or occurrences that are separate from and unrelated to the facts supporting the basis for his claims arising from the June 20, 2019 slip and fall.   Plaintiff further alleges no facts to describe how Defendants Moore and Thompson were involved in the June 20, 2019 slip and fall.   Accordingly, the undersigned recommends Defendants' motion to dismiss (D.E. 48) be granted to the extent that Plaintiff's claims against Defendants Moore and Thompson be dismissed on the basis of improper joinder under Rules 18(a) and 20).

### (3) Defendants Daniel and Dominguez

Plaintiff alleges the following facts in his amended complaint against Defendants Daniel and Dominguez.   Plaintiff suffers from ADHD and other intellectual disabilities. While in the free world, Plaintiff was an inpatient and outpatient in a mental hospital where he was seen by a psychotherapist and would receive his medications.   Upon arrival at the McConnell Unit sometime between 2011 and 2014, he was seen by Defendants Daniel and Dominguez.   Apparently, despite being aware of Plaintiff's mental issues, Defendants Daniel and Dominguez removed Plaintiff's medications. Plaintiff was later denied mental health treatment by these defendants for his ADHD disorder, who also failed to protect him from violence at the hands of other inmates.   Defendants Daniel and Dominguez also did

nothing to protect Plaintiff from suffering retaliation for filing a previous lawsuit (presumably *Moreno I*) against several of the named defendants.

Plaintiff further alleges that Defendants Vivis and Dominguez failed to follow-up on Plaintiff's mental health disabilities and provide proper care. Plaintiff appears to complain that these defendants caused Plaintiff, who was Covid-19 negative, to be transferred to a cell with a Covid-19 positive inmate. Plaintiff also alleges that he did not receive medical care or treatment from Defendants Daniel and Dominguez for his neck, back, and eye injuries or receive prescription eyeglasses.

Defendants contend in their motions to dismiss that Plaintiff's claims against Defendants Daniel and Dominguez should be dismissed because they are unrelated to the slip-an-fall allegations. (D.E. 48, pp.12-14; D.E. 49, pp. 11-12). The undersigned agrees. Plaintiff's claims against these defendants arise out of transactions or occurrences that are separate from and unrelated to the facts supporting the basis for his claims arising from the June 20, 2019 slip and fall. Plaintiff further alleges no specific facts to describe whether Defendants Daniel and Dominguez failed to provide any medical treatment for injuries suffered in connection with his June 20, 2019 slip and fall or otherwise failed to provide any mental health treatment in the wake of that accident. Accordingly, the undersigned recommends Defendants' motions to dismiss (D.E. 48-49) be granted to the extent that Plaintiff's claims against Defendants Daniel and Dominguez should be dismissed on the basis of improper joinder under Rules 18(a) and 20).

### *(4) Defendants Samaniego and Bryant*

Plaintiff alleges the following facts in his amended complaint against Defendants Samaniego and Bryant.  On June 26, 2019, certain officers and administrators retaliated against Plaintiff for filing *Moreno I* by moving Plaintiff to administrative segregation. On August 25, 2019 and December 23, 2019, Plaintiff was moved on two occasions to the administrative segregation (the 12 Building) for no reason besides retaliation and removed from certain educational and religious programs.  At some point, Plaintiff was moved to another building and housed with a new cell mate.

Plaintiff complains he was denied the right to face his accusers in connection with a disciplinary case brought against him and that he was assessed a punishment of being housed io the 12 Building.   According to Plaintiff, Defendant Samaniego was the disciplinary hearing officer in connection with Plaintiff's disciplinary cases. Defendant Samaniego broke the "prison rules" while conducting the disciplinary hearings.  (D.E. 22, p. 4).  Defendant Bryant was the counsel substitute, who is assigned to advocate for prisoners charged with major disciplinary infractions.  Plaintiff alleges that Defendant Bryant failed to represent him in accordance with TDCJ policies.  (D.E. 22, pp. 4, 9).

Defendants contend in their motions to dismiss that Plaintiff's claims against Defendants Daniel and Dominguez should be dismissed because they are unrelated to the slip-and-fall allegations.  (D.E. 48, pp.14-16; D.E. 49, pp. 9-11).   The undersigned agrees. Liberally construed, Plaintiff appears to claim that Defendants Samaniego and Bryant acted in retaliation for Plaintiff filing a previous lawsuit (presumably *Moreno I*) and violated his

due process rights during his disciplinary hearings.  With respect to these claims, it is unclear what disciplinary hearings that Plaintiff was referring to or when they took place.

Plaintiff's claims   against Defendants Samaniego and Bryant arise out of transactions or occurrences that are separate from and unrelated to the facts supporting the basis for his claims arising from the June 20, 2019 slip and fall.  Plaintiff further alleges no specific facts to describe what actions Defendants Samaniego and Bryant took in response to the slip-an-fall incident.   Accordingly, the undersigned recommends Defendants' motions to dismiss (D.E. 48, 49) be granted to the extent that Plaintiff's claims against Defendants Samaniego and Bryant should be dismissed on the basis of improper joinder under Rules 18(a) and 20).

### (5) Defendant Lawson

Plaintiff alleges the following facts in his amended complaint against Defendant Lawson, the medical practice manager at the McConnell Unit.  Since the filing of this lawsuit, Defendant Lawson has charged Plaintiff fees for his medical records in retaliation against Plaintiff for filing this lawsuit.  Plaintiff states that Defendant Lawson know about his intellectual disabilities and lack of physical mobility.  Defendants Lawson has further caused Plaintiff serious pain in connection with their scheduling of medical appointments for Plaintiff.

Defendants contend that Plaintiff's claims against Defendant Lawson Daniel and Dominguez should be dismissed because they involves transactions or occurrences that occurred after the filing of this case and are unrelated to the single transaction (the slip-

and-fall allegations) which form the basis of this action.   (D.E. 48, pp.10-11).   The undersigned agrees.

Plaintiff's claims against Defendant Lawson arise out of transactions or occurrences that are separate from and unrelated to the facts supporting the basis for his claims arising from the June 20, 2019 slip and fall.   Plaintiff further alleges no specific facts to describe how Defendant Lawson failed to provide Plaintiff with medical care following the June 20, 2019 incident or otherwise delayed medical care for Plaintiff.   Accordingly, the undersigned recommends Defendants' motion to dismiss (D.E. 48) be granted to the extent that Plaintiff's claims against Defendant Lawson should be dismissed on the basis of improper joinder under Rules 18(a) and 20).

### (6) Defendant Miller

Plaintiff alleges the following facts against Assistant Warden Miller.   Defendant Miller is responsible for reviewing all medical appeals regarding medical and disciplinary issues.   (D.E. 22, p. 4).   He has at all times been aware of: (1) Plaintiff's previous lawsuit in *Moreno I* filed against several named defendants in this action; (2) Plaintiff's move to segregation for no probable cause and the fact certain defendants were harassing Plaintiff; and (3) actions by several co-defendants who harassed Plaintiff "with evil retaliation and discriminated Plaintiff from all medical programs and services."   (D.E. 23, p. 19).

Defendants contend that Plaintiff's claims against Defendant Miller should be dismissed because: (1) he has failed to state a constitutional claim against him in connection with any delays in medical treatment; (2) Plaintiff improperly joins claims that are unrelated to the June 20, 2019 slip and fall; and (3) Defendant Miller cannot be held liable in his supervisory capacity.   (D.E. 48, pp. 16-20).   Plaintiff's claims against Defendant Miller are subject to dismissal for the reasons explained below.

Plaintiff's claims against Defendant Miller derive primarily from his capacity as a supervisory official. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff has failed to allege any specific facts to indicate that Defendant Miller personally participated in the denial of Plaintiff's constitutional rights or should otherwise

be held liable in a supervisory capacity.  Plaintiff's allegations, accepted as true, fail to suggest that he played any role in connection with the medical attention and care received by Plaintiff following his slip and fall.  To the extent that Plaintiff claims that Defendant Miller had any role with regard to his allegations of harassment and retaliation by co-defendants following the filing of *Moreno I*, such claims are unrelated and improperly joined in this action.

Liberally construed, Plaintiff appears to express dissatisfaction with Assistant Miller's handling of Plaintiff's administrative appeals and grievances.  Such allegations, however, fail to state a cognizable constitutional claim.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, the undersigned respectfully recommends Defendants' motion to dismiss (D.E. 48) be granted to the extent that: (1) Plaintiff's claims against Defendants Miller arising from his June 20, 2019 slip and fall be dismissed for failure to state a claim

for relief; and (2) the remaining claims against Defendant Miller be dismissed on the basis
of improper joinder under Rules 18(a) and 20).

### D.    Qualified Immunity

Defendants contend that they are entitled to qualified immunity which shields them
from constitutional liability in their individual capacities.  (D.E. 48, pp. 28-30; D.E. 49, pp.
28-30).  The doctrine of qualified immunity affords protection against individual liability
for civil damages to officials "insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person would have known."
*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S.
800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to
the plaintiff to demonstrate the inapplicability of the defense.  *McClendon v. City of
Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  "To discharge this burden, the plaintiff must
satisfy a two-prong test.  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir.
2005).  First, he must claim that the defendant committed a constitutional violation under
current law.  *Id.*  Second, he must claim that the defendant's action was objectively
reasonable in light of the law that was clearly established at the time of the complained-of
actions. *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by
first determining whether a constitutional violation has occurred.  *See Pearson*, 555 U.S.

at 236.  In this case, because Plaintiff has failed to state cognizable constitutional claims against Defendants, it is not necessary to examine whether Defendants' actions were objectively reasonable.   Accordingly, the undersigned respectfully recommends Defendants' motions to dismiss (D.E. 48, 49) be granted to the extent that they are entitled to qualified immunity as to Plaintiff's § 1983 claims asserted against them in their individual capacities.

### E.    Eleventh Amendment

Defendants contend that they are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacities for injunctive relief.  (D.E. 48, pp. 31-32; D.E. 49, pp. 30-32)  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted).  Thus, the *Ex parte Young* exception applies when (1) a plaintiff has pled a valid claim for a violation of federal law against a state official responsible for enforcing the law at issue in that person's official capacity; (2) the claim seeks only prospective injunctive relief; and (3) the claim seeks to address a "continuing violation of federal law."  *Walker v. Livingston*, 381 F. App'x 477, 478-79 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)).

22 / 33

As discussed above, Plaintiff's claims seeking injunctive relief have been rendered moot due to Plaintiff's transfer to the Estelle Unit.  In light of Plaintiff's transfer and the recommendations above that his § 1983 claims are subject to dismissal, Plaintiff cannot show that he is suffering from a continuing violation of his constitutional rights. Accordingly, the undersigned respectfully recommends Defendants' motions to dismiss (D.E. 48, 49) be granted to the extent that Plaintiff's claims against Defendants in their official capacities for injunctive relief are barred by the Eleventh Amendment.

### F.    ADA

While difficult to decipher, Plaintiff appears to claim that his ADA rights were violated when Defendants delayed his therapy for his physical and mental therapy and subsequently transferred him to the Estelle Unit without a hearing.  (D.E. 1, p. 4; D.E. 22, pp. 20-22). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

To establish a valid claim under Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).  Intentional discrimination is

required in order to recover compensatory damages under the ADA. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669,  672 (5th Cir. 2004).  That is, by failing to accommodate for the disability of the disabled person, the defendant has effectivity discriminated against the person. *Tennessee v. Lane,* 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.  *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA).

In their motions to dismiss, Defendants have construed Plaintiff's ADA claim as asserting a delay of medical care during the COVID-19 pandemic.  (D.E. 48, p. 24; D.E. 49, p. 24).  Defendants nevertheless contend that Plaintiff has failed to state an ADA claim and that, to the extent his ADA claim is unrelated to the June 20, 2019 slip and fall, such

claims should not be joined in this action.  (D.E. 48, pp. 8-10, 24-28; D.E. 49, pp. 7-9, 24-27).

Plaintiff's allegations, accepted as true, indicate that he suffers from physical and mental disabilities.  Even assuming he is a qualified individual with a disability within the meaning of the ADA, he has failed to allege specific facts to show he was denied a reasonable accommodation for his disability.

The ADA "imposes an obligation to provide reasonable accommodations for specific limitations imposed by the claimant's disability."  *Garza v. City of Donna*, No. 7:16-CV-558, 2017 WL 2861456, at *7 (S.D. Tex. July 5, 2017).  "[T]he ADA requires [entities] to reasonably accommodate limitations, not disabilities."  *Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 216 (5th Cir. 2015).

Plaintiff's allegations suggest only that prison officials at the McConnell Unit were generally inattentive to his physical and mental health issues.  He provides no specific allegations indicating that prison officials had denied him reasonable accommodations apart from inattention to his medical needs.  Such allegations fail to state an ADA claim. *See Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (holding that "[t]he ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners").

Moreover, Plaintiff fails to allege any specific facts as to how prison officials violated his ADA rights by failing to provide him with reasonable accommodations for his

limitations in connection with the June 20, 2019 slip and fall incident. A major component of Plaintiff's ADA claims focuses on the fact he was transferred to the Estelle Unit on March 16, 2020. Thus, similar to his 1983 claims, a portion of Plaintiff's ADA claim arises out of transactions or occurrences that are separate from and unrelated to the facts supporting the basis for his claims arising from the June 20, 2019 slip and fall.

Accordingly, the undersigned respectfully recommends Defendants' motions to dismiss (D.E. 48, 49) be granted to the extent that: (1) Plaintiff's ADA claim related to medical care arising from the June 20, 2019 slip and fall be dismissed with prejudice for failure to state a claim for relief; and (2) the remaining portion of Plaintiff's ADA claim be dismissed on the basis of improper joinder under Rules 18(a) and 20).

### G. Dismissal Under Section 1915(e)(2)(B)

Section 1915(e)(2)(B) mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious." 28 U.S.C. 1915(e)(2)(B). Similar to the standard for Rule 12(b)(6) motions, an action may be dismissed under § 1915(e)(2)(B) for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

In his amended complaint, Plaintiff named Practice Manager Kendra as a defendant in this case. The undersigned ordered service of Plaintiff's complaint on Defendant Kendra along with the other defendants named in the amended complaint. (D.E. 38). The Office of the Attorney General subsequently advised the Court that it had no records of any

medical provider or nurse with this name.  (D.E. 47).  Nevertheless, as discussed below, the undersigned finds that Plaintiff's allegations, accepted as true, fail to state a claim against Defendant Kendra.

Plaintiff's allegations against Defendant Kendra mirror his allegations advanced against Defendant Lawson.  Plaintiff alleges that Defendant Kendra, since the filing of this lawsuit, has charged Plaintiff fees for his medical records in retaliation against Plaintiff for filing this lawsuit.  Plaintiff further states that Defendant Kendra knew about his intellectual disabilities and lack of physical mobility.  Defendant Kendra has further caused Plaintiff serious pain in connection with their scheduling of medical appointments for Plaintiff.

Plaintiff's claims  against Defendant Kendra arise out of transactions or occurrences that are separate from and unrelated to the facts supporting the basis for his claims arising from the June 20, 2019 slip and fall.  Plaintiff further alleges no specific facts to describe how Defendant Kendra failed to provide Plaintiff with medical care following the June 20, 2019 incident or otherwise delayed medical care for Plaintiff.  Accordingly, pursuant to § 1915(e)(2)(B), the undersigned recommends that Plaintiff's claims against Defendant Kendra should be dismissed on the basis of improper joinder under Rules 18(a) and 20).

## H. State Law Claims

Plaintiff alleges that many of the defendants responsible for providing medical services to Plaintiff committed negligence and medical malpractice.  (D.E. 23, p. 16). Defendants did not address Plaintiff's state law claims in their motions to dismiss.

Nevertheless, the undersigned respectfully recommends that these state law claims be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3) (supplemental jurisdiction may be declined if "the district court has dismissed all claims over which it has original jurisdiction"). To the extent Plaintiff has a viable cause of action for negligence or medical malpractice, those claims may be brought in state court.

### I.  Plaintiff's Motions

#### *(1) Plaintiff's Motion for Default Judgment*

Plaintiff seeks default judgment against Defendants.  (D.E. 55).  Federal Rule of Civil Procedure 55 provides in pertinent part that:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a).  "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."  *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

Plaintiff is not entitled to default judgment in this case.  Defendants have appeared in this case through their properly filed motions to dismiss to defend themselves against Plaintiff's allegations.  Plaintiff otherwise presents to reason to justify issuing the drastic remedy of default judgment against any defendant.  Accordingly, the undersigned respectfully recommends that his Motion for Default Judgment (D.E. 55) be denied.

#### *(2) Motions for Preliminary Injunctive Relief*

Plaintiff has filed several motions in which he effectively asks the Court for preliminary injunctive relief.  (D.E. 57, 58, 62, 64).  Plaintiff again provides rambling narratives in his motions which are difficult to follow.  As best as can be gleaned, Plaintiff complains about his current confinement at the Estelle Unit and asks the Court to: (1) direct staff members at the Estelle Unit to stop tampering with his legal mail (D.E. 57, pp. 1-2; D.E. 58, 1-2); (2) cease retaliating and discriminating against him (D.E. 58, pp. 1-2; D.E. 64, p. 6); (3) provide Plaintiff with access to Estelle Unit's law library and certain legal forms (D.E. 58, p. 1-2); and (4) release Plaintiff from maximum security at the Estelle Unit (D.E. 64, p. 6).

In a separate Motion for Entry of Order (D.E. 62), Plaintiff further complains about his conditions of confinement, including the adequacy of his medical care, while currently housed at the Estelle Unit.  (D.E. 62).   Plaintiff asks the Court to direct officials at the Estelle Unit to provide him with necessary medical care and unrestrictive access to courts and to cease discriminating and harassing him.  (D.E. 62, pp. 12-13).

Plaintiff's motions seeking preliminary injunctive relief are without merit.  In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013).  Injunctive relief is an extraordinary

remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted).   Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered.   *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

Plaintiff's motion fails to warrant the extraordinary remedy of a preliminary injunction.  Plaintiff fails to present any argument to show a substantial likelihood success on any of his claims.  Indeed, as discussed above, the undersigned has recommended that Defendants motions to dismiss be granted with respect to each of Plaintiff's claims raised in this case.  Furthermore, Plaintiff raises issues pertaining to his current confinement at the Estelle Unit which are unrelated to his claims challenging his June 20, 2019 slip and fall at the McConnell Unit.  *See Carroll v. Rupert*, No. 6:15cv569, 2018 WL 9815634, at * (E.D. Tex. Mar. 20, 2018) (recognizing that a movant is not entitled to preliminary injunctive relief when his motion has no relation to the claims raised in the case).

Plaintiff has failed to demonstrate a substantial threat of an irreparable injury.  The record in this case belies any suggestion that Plaintiff has been denied access to the courts as he has successfully filed numerous motions and responses in this case.  His conclusory allegations of potential harm at the Estelle Unit do not amount to a constitutional violation, and in the absence of such a violation, federal courts are reluctant to interfere in the internal affairs of a state prison.  *See Richie v. UTMB Hospital Galveston*, No. 2:12-CV-322, 2012

WL 12871940, at *2 (S.D. Tex. Oct. 18, 2012) (citing *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988)).

Furthermore, interference with the operations of the Estelle Unit on matters unrelated to the issues presented in this case would not be in the public's interest. Because Plaintiff cannot satisfy the elements necessary for preliminary injunctive relief, the undersigned respectfully recommends that his motions (D.E. 57, 58, 62, 64) be denied.

## V.   RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that the Court **GRANT** in all respects the motions to dismiss (D.E. 48, 49) filed by Defendants Lawson, Dominguez, Moore, Thompson, Samaniego, Miller, Kwarteng, Echavarry, Steger, Daniel, and Bryant. The undersigned, therefore, respectfully recommends that:

(1) (a) Plaintiff's deliberate indifference claims against Defendants Kwarteng, Echavarry, and Steger, arising from his June 20, 2019 slip and fall, be **DISMISSED with prejudice**  as frivolous and/or for failure to state a claim for relief; and (b) the remaining claims against Defendants Kwarteng, Echavarry, and Steger be **DISMISSED** on the basis of improper joinder under Rules 18(a) and 20).

(2) Plaintiff claims against Defendants Moore, Thompson, Lawson, Dominguez, Daniel, Samaniego, and Bryant be **DISMISSED** on the basis of improper joinder under Rules 18(a) and 20).

(3) (a) Plaintiff's claims against Defendant Miller arising from his June 20, 2019 slip and fall be **DISMISSED with prejudice** for failure to state a claim for relief; and (b) the remaining claims against Defendant Miller be **DISMISSED** on the basis of improper joinder under Rules 18(a) and 20).

(4) (a) Plaintiff's ADA claim related to medical care arising from the June 20, 2019 slip and fall be **DISMISSED with prejudice** for failure to state a claim for relief; and (b) the remaining portion of Plaintiff's ADA claim be **DISMISSED** on the basis of improper joinder under Rules 18(a) and 20).

(5) Plaintiff's requests for injunctive relief be **DISMISSED** from this case as moot.

The undersigned respectfully recommends further that: (1) Plaintiff's claims against Defendant Lisa Kendra be **DISMISSED with prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B); (2) the Court **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law claims of negligence and medical malpractice; (3) Plaintiff's Motion for Default Judgment (D.E. 55) be **DENIED**; and (4) Plaintiff's motions for preliminary injunctive relief (D.E. 57, 58, 62, 64) be **DENIED.**

Respectfully submitted on June 1, 2021.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).